IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *vs.*, | § | CASE NO. <u>1:25-CR-138-2</u> |
| | § | |
| NORA ALICIA AVILA - GUEL. | § | |

---

**DEFENDANT NORA ALICA AVILA – GUEL's MOTION AND BRIEF FOR JUDGMENT OF ACQUITTAL UNDER RULE 29 (a) and (c), OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE FERNANDO RODRIGUEZ, JR.:

Comes Now, Nora Alicia Avila-Guel, (<u>Defendant</u>), by and through undersigned counsels, and respectfully move this Court pursuant to Federal Rule of Criminal Procedure 29(a) and (c) for a Judgment of Acquittal.

## I. <u>LEGAL PROVISIONS INVOLVED</u>

*[T]he Court on the Defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.*

Rule 29(a), Federal Rules of Criminal Procedure (emphasis added)

*[T]he standard of proof beyond a reasonable doubt… "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. At the same time, by impressing upon the factfinder the need to reach a subjective state of near certitude as to the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself….*

*The Winship doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts of evidence…. Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt…. [W]hen such a conviction occurs…., it cannot constitutionally stand.*

*After Winship, the critical inquiry on review of the sufficiency of evidence to support a criminal conviction must be not simply whether the Jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.*

*Jackson v. Virginia*, 443 U.S. 307, 315-19 (1979) (quoting *In re Winship*, 397 U.S. 358 (1970))

## II. <u>INTRODUCTION</u>

Nearly 37 years ago, in its seminal decision in *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979), the Supreme Court recognized that "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt…. [W]hen such a conviction occurs…., it cannot constitutionally stand." Not surprisingly, *Jackson's* constitutional imperative is embodied in Federal Rule of Criminal Procedure 29(a) itself, which provides that a district court "must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction."

The evidence adduced at trial in this case was woefully insufficient on the key elements of the Defendants' intent to willfully join in the conspiracy alleged in the indictment and to harbor, as charged in Counts II and III of the Indictment, in order to prove their guilt beyond a reasonable doubt.

The record reflects (1) a glaring absence of evidence that the Defendant made an agreement and willfully joined in the agreement to commit this offense, and (2) the government's theory of *harboring* without proving concealment, as elicited by the 5th Circuit's definition, created a constructive amendment to the indictment presented to the Grand Jury.

III. <u>THE TRIAL EVIDENCE FAILS TO SUPPORT THE INDICTMENT</u>

A.  <u>The trial testimony cannot prove conspiracy (count I) beyond a reasonable doubt.</u>

The indictment charges Defendant under 8 U.S.C. § 1324(a)(1)(A)(v)(I) with conspiracy to conceal, harbor, or shield from detection, aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). To convict on this count, the government must prove beyond a reasonable doubt:

> (1) First: That the Defendant and at least one other person made an agreement to commit the crime of harboring aliens who had entered or remained in the United States in violation of law; and
>
> (2) Second: That the Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

i. <u>No Agreement</u>

The testimony of material witnesses Sanchez-Martinez and Ibarra-Otero confirms the absence of any agreement, and the government's agents offered no evidence establishing one. To illustrate, the following excerpts from their sworn testimony make clear that Ms. Avila entered into, coordinated, or financed any such arrangement.

Sanchez-Martinez testified: "Did Mr. Baez or Ms. Avila pay anyone to have you brought here? – No." (Sanchez-Martinez Depo., p. 31, ln. 1-3). When asked who arranged for housing, he responded only about Mr. Baez: "Did he show you where you were going to stay? – He didn't

show me, but he told me I could stay there." (Id. at p. 15, ln. 16-18). He confirmed that food was provided by "the owner's, Mr. Baez." (Id. at p. 23, ln. 8-9). He testified that he did not pay rent to either Baez or Avila. (Id. at p. 23, ln. 18-20). When asked about Ms. Avila specifically, Sanchez-Martinez stated: "Did you ever see Ms. Avila working at Abby's Bakery? – No." (Id. at p. 21, ln. 4-6).

Ibarra-Otero corroborated that no unlawful agreement existed. He testified: "Did Mr. Baez and Ms. Avila have any involvement in you coming here illegally? – No." (Ibarra-Otero Depo., p. 27, ln. 2-4). He further denied that they coordinated with or paid a smuggler: "Did Mr. Baez and Ms. Avila coordinate with said human smuggler to bring you across illegally? – No. Did they pay said human smuggler to have you brought here? – No." (Id. at p. 27, ln. 8-13).

There is no evidence tying Ms. Avila to any agreement. Decisions about housing, food, and work were attributed solely to Mr. Baez.

ii. No Knowledge or Intent

The testimony also demonstrates that Ms. Avila did not knowingly or willfully join any unlawful purpose.

Sanchez-Martinez testified: "Were you ever coached by them to avoid immigration officials? – No." (Sanchez-Martinez Depo., p. 35, ln. 15-17). He further stated: "Did Mr. Baez and Ms. Avila ever provide you fraudulent documentation to work? – No." (Id. at p. 35, ln. 18-20). Ibarra-Otero gave the same account. He testified: "Were you ever coached by them to avoid immigration officials? – No." (Ibarra-Otero Depo., p. 37, ln. 14-16). And: "Did Mr. Baez and Ms. Avila ever provide you fraudulent documentation to work? – No, no." (Id. at p. 37, ln. 17-21). He also emphasized that he was free to live elsewhere: "But you could have stayed anywhere else? – Yes, yes." (Id. at p. 39, ln. 24-25).

This evidence suggests that Ms. Avila had no intent to further an unlawful purpose. At most, the record reflects her presence at the bakery as Mr. Baez's spouse.

iii. <u>No Concealment or Shielding</u>

Finally, both witnesses flatly denied being concealed or shielded.

Sanchez-Martinez testified: "Did you at any time feel that Mr. Baez and Ms. Avila were hiding you? – I would say no, because we were living there." (Sanchez-Martinez Depo., p. 34, ln. 4-6). He also testified: "Did you at any time feel that Mr. Baez and Ms. Avila were keeping you from the public eye? – I would say no, because we could go in and go out, and we would be walking to the store, because we didn't have vehicles." (Id. at p. 34, ln. 7-11). When asked about the location, he responded: "So it was not in the back or detached from the building? It was close to the road, right? – Yes, it was in the front in the plaza." (Id. at p. 34, ln. 15-17). "It was not hidden? – No, it was there in front of the plaza." (Id. at p. 34, ln. 18-19). "So this place was in plain sight and out in the open? – Yes. That's where the road goes through, so we would get out there." (Id. at p. 34, ln. 20-23).

Ibarra-Otero echoed this account. He testified: "Would you grill or barbecue meat? – Yes, sometimes. … Outside out in the open? – Yes, outside in the open." (Ibarra-Otero Depo., p. 35, ln. 20-25; p. 36, ln. 1). He continued: "So you would see people driving by, walking by? – Yes. And they would obviously see you too? – Yes." (Id. at p. 36, ln. 2-5). When asked directly: "Did you at any time feel as if Mr. Baez and Ms. Avila were hiding you? – No." (Id. at p. 36, ln. 6-8). "Did you at any time feel as if Mr. Baez and Ms. Avila were keeping you from the public eye? – No, I didn't feel that." (Id. at p. 36, ln. 9-11). He concluded about the living quarters: "This place you slept, was it in the back of the building or detached from the building? – No. So it was not hidden?

– No, it wasn't. So this place was in plain sight and not in the open? – Yes." (Id. at p. 36, ln. 18-25).

This testimony directly contradicts the government's theory. Both witnesses described a public, visible living situation, not concealment.

The government presented no evidence of an agreement, no evidence of knowledge or intent, and no evidence of concealment or shielding. Every witness rejected the notion that Ms. Avila acted to hide or facilitate them. At most, the record places her at the bakery in association with Mr. Baez, which the Jury was expressly instructed is insufficient to prove conspiracy. Because the testimony affirmatively negates the required elements, the conviction on Count I cannot stand.

B.  <u>The trial testimony cannot prove Counts 2 and 3 beyond a reasonable doubt.</u>

The Jury was instructed that to convict in Counts 2 and 3 under 8 U.S.C. § 1324(a)(1)(A)(iii), the government had to prove beyond a reasonable doubt:

> (1) that the alien entered or remained in the United States unlawfully;
> (2) that the Defendant concealed, harbored, or shielded the alien from detection;
> (3) that the Defendant knew or recklessly disregarded the alien's unlawful status; and
> (4) that the Defendant's conduct substantially facilitated the alien's continued unlawful presence.

The Court also instructed the Jury that 'the mere act of providing shelter to an alien is not, alone, sufficient to prove beyond a reasonable doubt that the defendant harbored an alien.' (Final Jury Charge, ECF No. 138 p. 14).

Those elements track the controlling Fifth Circuit construction of the harboring statute. The Fifth Circuit has explained that the conceal–harbor–shield cluster requires conduct that hides a person from detection. Merely providing a place to live is not enough; the statute requires

'some level of covertness' and conduct that involves 'something being hidden from detection.'

*Cruz v. Abbott*, 849 F.3d 594, 600 (5th Cir. 2017). The defense's Rule 104(a) motion asked the

Court to apply that same definition and cabin any broader theory. (Motion, ECF No. 115).

I. Sanchez-Martinez Testimony

1. *No concealment, harboring, or shielding:*

   i.  Q Did you at any time feel that Mr. Baez and Ms. Avila were hiding you?
       A I would say no, because we were living there.
       (Sanchez-Martinez Depo., p. 34, ln. 4-6).

   ii. Q Did you at any time feel that Mr. Baez and Ms. Avila were keeping you from the
       public eye?
       A I would say no, because we could go in and go out and we would be walking to the
       store, because we didn't have vehicles.
       (Sanchez-Martinez Depo., p. 34, ln. 7-11).

   iii. Q So it was not in the back or detached from the building? It was close to the road,
       right?
       A Yes, it was in the front in the plaza.
       (Sanchez-Martinez Depo., p. 34, ln. 15-17).

   iv. Q It was not hidden?
       A No, it was there in front of the plaza.
       (Sanchez-Martinez Depo., p. 34, ln. 18-19).

   v.  Q So this place was in plain sight and out in the open?
       A Yes. That's where the road goes through, so we would get out there.
       (Sanchez-Martinez Depo., p. 34, ln. 20-23).

2. *No substantial facilitation:*

   i.  Q Did you have to pay Mr. Baez or Ms. Avila rent for staying in that room?
       A No.
       (Sanchez-Martinez Depo., p. 23, ln. 18-20).

   ii. Q Did Mr. Baez or Ms. Avila pay anyone to have you brought here?
       A No.
       (Sanchez-Martinez Depo., p. 31, ln. 1-3).

iii. Q Were you ever coached by them to avoid immigration officials?
A No.
(Sanchez-Martinez Depo., p. 35, ln. 15-16).

iv. Q Did Mr. Baez and Ms. Avila ever provide you fraudulent documentation to work?
A No.
(Sanchez-Martinez Depo., p. 35, ln. 18-20).

v. Q But it wasn't required of you to stay there?
A No.
(Sanchez-Martinez Depo., p. 36, ln. 15-16).

3. *The Defendant knew or recklessly disregarded the alien's unlawful status*;

No testimony from Sanchez-Martinez directly addressing this category.

## II. Ibarra-Otero Testimony

1. *No concealment, harboring, or shielding*:

i. Q Did you at any time feel as if Mr. Baez and Ms. Avila were hiding you?
A No.
(Ibarra–Otero Depo., p. 36, ln. 6-8).

ii. Q Did you at any time feel as if Mr. Baez and Ms. Avila were keeping you from the public eye?
A No, I didn't feel that.
(Ibarra–Otero Depo., p. 36, ln. 9-11).

iii. Q This place you slept, was it in the back of the building or detached from the building?
A No.
Q So it was not hidden?
A No, it wasn't.
(Ibarra–Otero Depo., p. 36, ln. 18-22).

iv. Q So this place was in plain sight and not in the open?
A Yes.
(Ibarra–Otero Depo., p. 36, ln. 23-25).

v. Q Would you grill or barbecue meat?
A Yes, sometimes.

Q Outside out in the open?
A Yes, outside in the open.
(Ibarra–Otero Depo., p. 35, ln. 20-25; p. 36, ln. 1).

vi.    Q So you would see people driving by, walking by?
A Yes.
Q And they would obviously see you too?
A Yes.
(Ibarra–Otero Depo., p. 36, ln. 2-5).

2.  *No substantial facilitation:*

i.    Q Did Mr. Baez and Ms. Avila have any involvement in you coming here illegally?
A No.
(Ibarra–Otero Depo., p. 27, ln. 2-4).

ii.    Q Did Mr. Baez and Ms. Avila coordinate with said human smuggler to bring you across illegally?
A No.
Q Did Mr. Baez and Ms. Avila pay said human smuggler to have you brought here?
A No.
(Ibarra–Otero Depo., p. 27, ln. 8-13).

iii.    Q Were you ever coached by them to avoid immigration officials?
A No.
(Ibarra–Otero Depo., p. 37, ln. 14-16).

iv.    Q Did Mr. Baez and Ms. Avila ever provide you fraudulent documentation to work?
A What do you mean?
Q Fake employment documents?
A No, no.
(Ibarra–Otero Depo., p. 37, ln. 17-21).

v.    Q But you could have stayed anywhere else?
A Yes, yes.
(Ibarra–Otero Depo., p. 39, ln. 24-25).

3.  *The Defendant knew or recklessly disregarded the alien's unlawful status;*

i.    Q Did you ever present documents as to your legal status to Mr. Baez the second time you came into the United States when you came to the bakery?

A Me to him?
(Ibarra–Otero Depo., p. 23, ln. 12-15).

ii.    Q Did Ms. Avila ever ask you to present documents as to your legal status the second time you came to the United States to work at the bakery?
Q Yes?
A No.
(Ibarra–Otero Depo., p. 23, ln. 1-3, 16-17).

iii.    Q Did Mr. Baez ever ask you to present documents as to your legal status the second time you came into the United States to work at the bakery?
A No.
(Ibarra–Otero Depo., p. 23, ln. 18-21).

iv.    Q Did you ever present documents as to your legal status to Ms. Avila the second time you came to the United States to work at the bakery?
(Unanswered but posed).
(Ibarra–Otero Depo., p. 23, ln. 22-24).

III. Application to Counts 2 and 3

A. *No concealment, harboring, or shielding*

The government failed to prove that the defendant concealed, harbored, or shielded anyone from detection. Both witnesses confirmed that their living arrangements were fully visible and not hidden from the public. Sanchez-Martinez testified: "I would say no, because we were living there." He explained further, "We could go in and go out … walking to the store … It was in the front in the plaza … it was there in front of the plaza … in plain sight and out in the open." (Sanchez-Martinez Depo., p. 34, ln. 4-23).

Similarly, Ibarra-Otero stated "No" when asked if he was ever hidden or kept from the public eye. He testified that the room where he slept was "not hidden," that he would barbecue "outside in the open," that "people driving by [and] walking by" could see him, and that he himself regularly saw others while outside the bakery. (Ibarra-Otero Depo., p. 35, ln. 20-25; p. 36, ln. 1-11, 18-25; p. 40, ln. 16-19).

The Fifth Circuit has made clear that "harboring" paired with "from detection" requires "some level of covertness well beyond merely renting or providing a place to live." *Cruz v. Abbott*, 849 F.3d 594, 600 (5th Cir. 2017). Here, the record shows the opposite of covertness: open, public living in a plaza with free movement in and out. The Jury itself was instructed that shelter alone does not equal harboring. On this evidence, no rational juror could have found the concealment element satisfied.

B. *No substantial facilitation*

The jury charge also required proof that the defendant's conduct substantially facilitated unlawful presence. The witnesses' testimony also forecloses that element. Sanchez-Martinez stated unequivocally that he was never coached to avoid immigration officials and was never provided fraudulent documents. (Sanchez-Martinez Depo., p. 35, ln. 15-20). Ibarra-Otero confirmed the same, testifying "No" when asked if he was coached to avoid officials or provided "fake employment documents." (Ibarra-Otero Depo., p. 37, ln. 14-21).

Both men further explained that they were not confined to the living quarters. Sanchez-Martinez testified, "But it wasn't required of you to stay there? – No." (Sanchez-Martinez Depo., p. 36, ln. 15-16). Ibarra-Otero echoed, "But you could have stayed anywhere else? – Yes, yes." (Ibarra-Otero Depo., p. 39, ln. 24-25). Neither described any restrictions on their freedom. In addition, Ibarra-Otero testified that defendants had no involvement in his unlawful entry: "Did Mr. Baez and Ms. Avila have any involvement in you coming here illegally? – No." "Did they coordinate with said human smuggler to bring you across illegally? – No." "Did they pay said human smuggler to have you brought here? – No." (Ibarra-Otero Depo., p. 27, ln. 2-13).

Finally, the testimony about their daily lives shows no facilitation. Their activities occurred in public view, in a location where they were plainly visible. They lived openly in a

commercial plaza, barbecued outside, walked to stores, and interacted with people. That is inconsistent with substantial facilitation, which requires conduct making unlawful presence easier or less difficult. The evidence proves only ordinary, public living, not harboring.

C. *No knowledge or reckless disregard*

The government was also required to prove that defendants knew, or recklessly disregarded, the witnesses' unlawful status. But Sanchez-Martinez testified that he never even saw Ms. Avila working at Abby's Bakery. (Sanchez-Martinez Depo., p. 21, ln. 4-6). This testimony undermines any suggestion that she knowingly participated in harboring conduct.

Neither Sanchez-Martinez nor Ibarra-Otero testified that the Defendant was aware of their immigration status. Instead, they described open, public living conditions with no concealment or evasion. While the Jury was given deliberate-ignorance and reckless-disregard instructions, those cannot substitute for evidence. On this record, there is no proof of knowledge or conscious disregard.

On this record, a rational juror had to speculate to find the third element. Speculation cannot sustain a conviction.

### IV. <u>CONCLUSION</u>

Under Rule 29 and *Jackson v. Virginia*, a conviction cannot stand where no rational juror could find guilt beyond a reasonable doubt, and here the government's proof fails at every essential element. The record shows no agreement, no knowledge or intent, and no concealment or substantial facilitation, as both material witnesses expressly denied that Ms. Avila engaged in or furthered any unlawful conduct. Their testimony establishes open and public living conditions inconsistent with "harboring," and the Fifth Circuit has made clear that mere shelter does not satisfy the statute. With no evidence of an agreement, no evidence of willful participation, and no

evidence of concealment, the government's case rests on speculation, which cannot constitutionally sustain a conviction. Counts 2 and 3, as well as the derivative conspiracy in Count 1, are therefore legally insufficient, and judgment of acquittal must be entered.

Dated August 26, 2025

Respectfully Submitted,

Law Firm of Cesar de Leon, PLLC

By: /s/ Cesar de Leon
Texas State Bar No. 24073774
Federal ID S.D.T.X No. 2202339
622 East St. Charles
Brownsville Texas 78520
Telephone +1.956.551.1327
Facsimile  +1.956.338.5897
Email: service@cesardeleonlaw.com

Diez and Crane Attorneys

Jaime Diez
Texas State Bar No. 783966
Southern District of Texas 23118
PO Box 3070
Brownsville, Texas 78523
Telephone: +1.956.544.3565

ATTORNEY's FOR DEFENDANT:
NORA ALICIA AVILA - GUEL.

FOR SERVICE PLEASE EMAIL US AT: service@cesardeleonlaw.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and was copy was Electronic mailed this 26th day of August 2025 to the following:

| Parties Served | Method of Service |
|---|---|
| Hon. Luis Salazar<br>Assistant United States Attorney<br>luis.salazar@usdoj.gov<br><br>Hon. Baltazar Salazar<br>Assistant United States Attorney<br>Baltazar.Salazar@usdoj.gov<br><br>United States Attorney's Office for the Southern District of Texas – Brownsville<br>600 E. Harrison St. Ste 201<br>Brownsville, Texas 78520 | _____ Regular Mail<br>_____ Certified Mail, RRR<br>_____ Hand Delivery<br>_____ Facsimile<br>____X____ Electronic Mail |

/s/ Cesar de Leon